UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Terry L. Noble, | Civil No. 12-1167 (JRT/LIB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Scott P. Fisher, Warden, | |
| Respondent. | |

This matter is before the Court upon Terry L. Noble's (Petitioner) Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be denied and that this action be dismissed with prejudice.

## I. BACKGROUND

Petitioner is a federal prisoner currently confined at the Federal Correctional Institution located in Sandstone, Minnesota. (Pet. for Writ of Habeas Corpus [Docket No. 1] at 2). He is serving a 120-month sentence imposed by the Honorable David M. Lawson for violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and 18 U.S.C. § 922(g). (Dec. of Julie Groteboer [Docket No. 4], Ex. 1 at 3). He has a projected release date of April 25, 2013. (Id.)

The basis for the present Petition arises from an incident that occurred on February 10, 2011. According to the incident report, at approximately 7:02 p.m., on February 10, 2011, Petitioner dialed a number previously identified on another inmate's (Owens) phone list, and after the person on the other end of the phone line picked up, Petitioner passed the telephone

1

receiver to the other inmate (Owens). (Dec. of Julie Groteboer, Ex. 2 at 2). Prison staff became aware of the incident at approximately 9:10 p.m., the same evening while monitoring phone calls made by prisoners. (Id.) An incident report was completed by the monitoring employee the same evening at approximately 9:35 p.m., and, in accordance with 28 C.F.R. § 541.14,[1] a copy of the report was promptly delivered to Petitioner the next morning at 8:05 a.m. (Id.) The completed incident report included all of the above mentioned facts and provided a "Prohibited Act Code" of "297." (Id.) When the investigating officer delivered a copy of the incident report to Petitioner, again in accordance with 28 C.F.R. § 541.14, the officer advised and read Petitioner the following rights statement:

> You are advised of your right to remain silent at all stages of the disciplinary process but are informed that your silence may be used to draw an adverse inference against you at any stage of the institutional disciplinary process. You are also informed that your silence alone may not be used to support a finding that you have committed a prohibited act.

(Id. at 3). Petitioner acknowledged that he understood his rights. (Id.) Petitioner was then read the incident report and given a copy of the incident report. (Id.) Petitioner provided the following statement in response: "Yeah it's just like you said[.] He didn't have any money and he's a friend of mine so I let him check on his Mom[.] [W]e don't owe each other nothing we are just friends." (Id.) Petitioner was reported to be cooperative and to display a good attitude during the investigation. (Id.) Because the investigating officer concluded that Petitioner was properly charged, he referred the matter to the Unit Discipline Committee (UDC). (Id.)

The UDC consists of one or more institution staff members delegated by the Warden with "the authority and duty to hold an initial hearing upon completion of the investigation." 28

---

[1] The Court cites to the Code of Federal Regulations sections that were in effect at the time that Petitioner committed the underlying acts. While the regulations were subsequently updated, see 76 Fed. Reg. 11078-01, 2011 WL 685946, the substantive provisions that apply to the present Petition generally remained the same. See 28 C.F.R. §§ 541.5-8.

C.F.R. § 541.15. Petitioner appeared before the UDC on February 15, 2011, as he was permitted to do, see 28 C.F.R. § 541.15(c), and after being advised of his rights, provided that he "let inmate Owens use a phone [because] he hadn't talked to his mom in a while and didn't have any money." (Dec. of Julie Groteboer, Ex. 2 at 2). In accordance with 28 C.F.R. § 541.15, the UDC made recommendations for sanctions and referred the matter to the Discipline Hearing Officer (DHO). (Id.) The UDC also provided Petitioner with a document entitled "Inmate Rights at Discipline Hearing," listing out Petitioner's numerous rights. (Id. at 10). Petitioner signed an acknowledgment that he was advised of the rights listed in the document. (Id.) Petitioner was also provided with a "Notice of Discipline Hearing Before the (DHO)," which listed "Phone Abuse – Non Criminal" as the alleged violation. (Id. at 11). On that notice, Petitioner was advised that he was "entitled to have a full-time staff member represent [him] at the hearing," and that he had the right to call witnesses at the hearing or present documentary evidence," both of which Petitioner declined. (Id.)

The DHO is "an independent hearing officer assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts . . . ," as well as "imposing appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by § 541.15 before the UDC." 28 C.F.R. § 541.16.

On February 23, 2011, the DHO directed that the initial incident report be updated to include additional relevant information. (Dec. of Julie Groteboer ¶ 9). The following day, on February 24, 2011, the initial incident report was "re-written" to include additional relevant information. (Id., Ex.3 at 2). The only update, however, was the addition of a sentence providing that "[a] review of the camera shows inmate Noble passing the phone to inmate Owens on the date and times the call was placed"—the incident report section remained the same in all

3

other respects, with the exception that the "Date and Time" section was updated to February 24, 2011 at 3:40 p.m. (Id.) The updated report was delivered to Petitioner at 8:55 a.m., the following day. (Id. at 2-3). The delivering officer again advised Petitioner of his rights, which Petitioner acknowledged he understood. (Id. at 3).

Subsequently, on February 28, 2011, another hearing was held before the UDC, at which time Petitioner was again advised of his rights and he "pled the fifth." (Id. at 2). The UDC again referred the matter to the DHO. (Id.) Petitioner was provided with the previously provided copies of the "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the (DHO)" documents, both of which he initialed and again dated. (Id., Ex. 2 at 10-11).

On March 10, 2011, at approximately 9:21 a.m., Petitioner appeared at a hearing before the DHO. (Id., Ex. 4 at 2). The DHO reviewed Petitioner's due process rights with him, including his rights to appeal any decision, and Petitioner provided that he understood his rights. (Id. at 3) (Dec. of Julie Groteboer ¶ 15). Petitioner waived his rights to be represented by a staff member, to call witnesses, or submit documentary evidence. (Id.) During the hearing, the DHO found that Petitioner admitted that he was guilty of the charges because "[he] did place the call and pass the phone to the other inmate, [even though he] didn't think it was a 297." (Id. at 2). After carefully considering the evidence, and based on the incident report and Petitioner's own admission during the DHO hearing that he "did place the call then pass the telephone to another inmate to talk," the DHO found that Petitioner violated Code 297. (Id. at 3). The DHO sanctioned Petitioner with disallowance of 27 days of Good Conduct Time (GCT), 14 days of disciplinary segregation (suspended pending 180 days clear conduct), loss of commissary and

telephone for 2 months. (Id.)² The DHO provided the following explanation for why he believed such sanctions were warranted:

> The action on the part of any inmate to use the telephone in an unauthorized manner poses a serious threat to the ability of staff to control the use of the telephone and monitor whether inmates are making calls for prohibited or illegal purposes. It is indicative of the intent to participate in unauthorized activities that could lead to disruptive behavior. The use of telephones is a privilege for inmates to maintain contact with their family and to maintain ties with them and not for criminal use. The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times.

(Id.) The DHO signed the Discipline Hearing Officer Report on August 1, 2011, and a copy of the report was delivered to Petitioner on August 25, 2011. (Id.); (Dec. of Julie Groteboer ¶ 15).

On September 6, 2011, Petitioner filed an administrative appeal with the BOP Regional Office, challenging the DHO's decision. (Id., Ex. 5 at 2-3). Petitioner argued that he "never possessed nor used an inmate's pin number," and as such, was "not guilty of a 297." (Id. at 2). He requested that the "incident report [be] expunged from [his] record." (Id.)

On September 14, 2011, the DHO amended his initial report to state that Petitioner was found to have committed a "297A" rather than the initially noted "297," which was to reflect the fact that Petitioner admitted to aiding another inmate in committing a 297 violation. (Id., Ex. 6 at 2). The report was also amended to include the finding that "[a]lthough [Petitioner] did not possess or use another inmate's pin, by placing a call and passing the telephone to another inmate [he] did aid in violating telephone procedures." (Id. at 3). The amended report also included the instruction that it did "not restart the inmate's appeal time frame [and that] [i]f the inmate disagrees with [the] amendment, he can continue his appeal through Central Office." (Id. at 4).

---

² The sanctions were within those available for a "high category" offense. See 28 C.F.R. § 541.13(a)(2).

On September 21, 2011, the Regional Office denied Petitioner's appeal. (Id., Ex. 5 at 3). A copy of the report as well as a copy of the amended DHO report was provided to Petitioner on September 21, 2011. (Dec. of Julie Groteboer ¶ 18). The Regional Office's response explained that "[a]lthough [Petitioner] did not possess another inmate's pin number or use another inmate's telephone account, [Petitioner] allowed an inmate to use [his] telephone account." (Dec. of Julie Groteboer, Ex. 5 at 3). This was a violation because "[p]olicy indicates any inmate planning, aiding, or attempting to commit any prohibited act will be charged the same as committing the act." (Id.) The Regional Office furthermore noted that "[a]n 'A' ha[d] been added to the charge to reflect that [Petitioner] aided another inmate in committing the prohibited act." (Id.) Finally, the response advised Petitioner that if he was still unsatisfied with the response, or disagreed with the amendments, he could appeal the decision to the Office of General Counsel within 30 days of the date from the response. (Id.)

Petitioner then filed an appeal with the Central Office on January 3, 2012. (Id., Ex. 7 at 15); (Dec. of Julie Groteboer ¶ 19). Although the time for the Central Office to respond was extended until March 3, 2012, Petitioner did not receive a response within the deadline. On May 15, 2012, Petitioner filed the present Petition. (See Docket No. 1).

**II. DISCUSSION**

In this Petition, Petitioner seeks review of a prison disciplinary hearing, in which he was found guilty of aiding the "use of a telephone for abuse other than criminal activity." Because Petitioner was incarcerated at a federal facility within the District of Minnesota at the time he filed his Petition and named the warden of the facility in which he is confined was named as the Respondent, the Court has jurisdiction to address the merits of his Petition. See, e.g., Martinez-Fuentes v. Fisher, No. 10-988 (PJS/JJK), 2011 WL 2112428, at *1-2 (D. Minn. Apr. 5, 2011);

6

Villegas v. Terrell, No. 08-176 (JNE/JSM), 2009 WL 2163599, at *1-2 (D. Minn. Jul. 16, 2009).[3]

Although Petitioner failed to provide any explanation in the section entitled "Grounds for this 28 U.S.C. § 2241 Petition," reading his pro se pleadings liberally (and taking into account all of the submissions throughout the disciplinary process regarding the incident at issue), in light of his pro se status, the Court construes the Petition as raising two claims: 1) that the DHO improperly amended the DHO report to include an "A"; and 2) there was insufficient evidence to support the DHO's finding that Petitioner violated Code 297A. (Pet. for Writ of Habeas Corpus at 1, 3).[4]

### A. Petitioner has not shown that his due process rights were violated

In his appeal to the Central Office, Petitioner appeared to argue[5] that his due process rights were violated because the DHO cannot "come back after the fact to change the prohibited act to fit what [the DHO says Petitioner is guilty of]." (Pet. for Writ of Habeas Corpus, Ex. 1 at 3).

The United States Supreme Court has previously explained that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). However, "[p]rison disciplinary proceedings are not part of a

---

[3] Although a petitioner must generally exhaust his administrative remedies before filing for habeas relief in federal court, here, there is no dispute that Petitioner exhausted his administrative remedies. (See Pet. for Writ of Habeas Corpus at 3-4); (United States' Response to Pet. for Writ of Habeas Corpus [Docket No. 3] at 9).
[4] Although the Court directed Petitioner to file a reply within 30 days of Respondent's response, if he so wished, Petitioner has not filed any reply. (See Order [Docket No. 2] at 2).
[5] Petitioner failed to list any grounds upon which he was filing this Petition, and as such, liberally reading his submission in light of his pro se status, the Court reads this claim from the appeal submitted through the administrative appeals process.

criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Hill, 472 U.S. at 454. "To satisfy the constitutional requirement under the due process clause of the Fourteenth Amendment, a prison disciplinary action such as a loss of good-time credits must satisfy only the simple procedural requirements prescribed in *Wolff*." Walker v. Fondren, No. 08-1412 (RHK/JSM), 2009 WL 3247971, at *6 (D. Minn. Oct. 5, 2009); Villegas, 2009 WL 2163599, at *3; Garvia v. Outlaw, 2012 WL 1831431, at *2 (E.D. Ark. Apr. 27, 2012).

There is no dispute that Petitioner received the last two of the due process requirements prescribed in Wolff. Petitioner received an opportunity to call witnesses and present documentary evidence during the DHO hearing held on March 10, 2011 a.m., and he waived both of these rights. Furthermore, Petitioner does not challenge the fact that he received the "Discipline Hearing Officer Report" dated August 1, 2011, as well as, the amended "Discipline Hearing Officer Report" dated September 14, 2011.

Here, Petitioner appears to argue that the described prohibited act in the reports was changed to fit Petitioner's actions. (See Pet. for Writ of Habeas Corpus at 3, Ex. 1 at 3) ("You can't come back after the fact to change the prohibited act to fit what you say I'm guilty of . . . ."). Such an argument, in the context of this matter, is without merit.

Prohibited Act Code 297 provides that the following is a violation of prison rules:

Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN

8

> number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code).

28 C.F.R. § 541.13; (Dec. of Julie Groteboer, Ex. 6 at 5). The list of violations also provides that: "*Aiding* another person to commit any of these offenses, *attempting* to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, *shall be considered the same as a commission of the offenses itself*." 28 C.F.R. § 541.13 (emphasis in original); (Dec. of Julie Groteboer, Ex. 6 at 5) (emphasis in original). Petitioner does not argue or dispute that both of these regulations were in effect at the time he committed the underlying act. The DHO, as noted in the Discipline Hearing Officer Report dated September 14, 2011, and the Regional Office, concluded that although Petitioner may not have possessed or used another inmate's PIN number, by voluntarily using his PIN number to place a call and passing the telephone to another inmate, Petitioner aided another prisoner in violating Code 297. For the reasons discussed more fully below, the DHO's decision and findings are supported by the required standard of evidence. Therefore, the Court finds that Petitioner has not shown that the underlying prohibited acts were changed or modified to fit the specific acts committed by Petitioner.

Petitioner's pro se pleadings, when construed liberally, could also be read to argue that Petitioner's due process rights were violated because the DHO's report was amended to state that Petitioner was guilty of aiding another inmate in violating Code 297. The Court understands this to be a challenge that Petitioner was not provided "advance written notice of the disciplinary charges," as required by Wolff.

The Court in Wolff explained that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." 418 U.S. at 564.

The Regulations provide that where the individual is charged with aiding another person to commit a prohibited act, "the letter 'A' is combined with the offense code." 28 C.F.R. § 541.13; Morrison v. Terrell, No. 08-665 (ADM/JJG), 2009 WL 2003332, at *2 (D. Minn. Jul. 6, 2009). Although the "A" had not been included in the charge listed in the incident reports and the initial DHO report, the Court does not believe that, under the circumstances of this case, it violated Petitioner's due process rights.

The Regulations themselves specifically provide that the DHO may find, based on the underlying facts provided in the incident report, that an inmate has committed a prohibited act other than the act initially charged. See 28 C.F.R. § 541.17(f) and (i); Redding v. Holt, 2007 WL 2155543, at *6 (M.D. Pa. Jul 26, 2007) ("[T]he regulations governing federal prison disciplinary hearings authorize a disciplinary hearing officer to change the charges on the incident report to conform to those charges which the evidence at the hearing proves an inmate committed and record such change on the report."). As such, an inmate's due process rights are not necessarily violated merely because the offense code listed in the initial incident report is different from the offense code upon which an inmate is ultimately found guilty of violating. See Holt v. Caspari, 961 F.2d 1370, 1371-73 (8th Cir. 1992) (rejecting the prisoner's argument that his due process rights were violated when the discipline committee elevated the initial charge from a Rule 24 to a Rule 3 violation because "[i]t [was] evident that the conduct violation report gave [the prisoner] all of the information he needed to make his defense"); Northern v. Hanks, 326 F.3d 909, 910 (7th Cir. 2003) (rejecting the petitioner's argument that "the reviewing authority's modification

of the charge [from a code 100 to a code 111/113-A] violated due process because it did not give him advance notice, [such that] he could not mount an appropriate defense"); Stanko v. Rios, 2009 WL 1066021, at *4-5 (D. Minn. Apr. 30, 2009); Johnson v. Bowersox, 1992 WL 55652, at *2 (E.D. Mo. Mar. 16, 1992) ("[A] prisoner may be found guilty of violating a different rule than that noted in a conduct violation report so long as the finding is based on the conduct described in the report, at least when the two rules involved carry the same range of penalties"); Redding, 2007 WL 2155543, at *6-7 (finding that the inmate's rights were not violated even though the petitioner was charged with an offense code of 305 and "the DHO changed the offense code 305 to a code 108 offense at the hearing," which the DHO then found the petitioner violated); Navedo v. Holt, 2009 WL 2007138, at *5-6 (M.D. Pa. Jul. 6, 2009) (finding that "it [was] clear there was no violation of Petitioner's due process rights with respect to the disciplinary proceedings and DHO hearing" because "the DHO was authorized to amend the charged offense from Code 111 to Code 113 since Petitioner's conduct proven by the evidence was more similar to the elements of the latter offense"); Meeks v. Buss, 2007 WL 1341118, at *1-2 (N.D. Ind. May 4, 2007) (explaining that "the facts alleged did not change and it is those facts, not the name and number, that are critical to determining whether [the petitioner] received adequate notice as required by Wolff" and holding that the inmate's due process rights would not have been violated even if the handwriting specifying that the petitioner was charged with aiding the commission of an offense were not present on the report); Wilson v. Knight, 2006 WL 2578903, at *1 (S.D. Ind. Sept. 5, 2006); Nelms v. Young, 2009 WL 1160682, at *9-10 (W.D. La. Apr. 29, 2009). A petitioner's due process rights are satisfied where the "incident report provided to [the p]etitioner more than twenty-four hours before his hearing contain[s] all the necessary facts to defend," particularly where "[t]he factual nature of the alleged prohibited conduct in the incident

11

report was the same." Redding, 2007 WL 2155543, at *7; Northern, 326 F.3d at 911 (citing Caspari, 961 F.2d at 1373 and explaining that "[b]ecause the factual basis of the investigation report gave [the petitioner] all the information he needed to defend against the [modified offense code], the reviewing authority's modification did not deprive [the petitioner] of his due process rights").

Here, the incident reports (both the initial and updated reports) stated that 297 was the "Prohibited Act Code" of which Petitioner was charged with violating. However, the "Description of Incident" section in the incident report clearly provided the underlying factual circumstances of the actions taken by Petitioner that the investigating officer, and the UDC and DHO, subsequently found to be a violation of the prison rules:

> On February 10, 2011 while monitoring an inmate phone call made by inmate Noble, . . . during a call placed on January 19, 2011, at approximately 7:02 p.m. inmate Noble dials a number previously on Owens['s] . . . phone list. After the person called picks up the phone, the phone is passed to Owens so he can talk to the caller. A review of the camera shows inmate Noble passing the phone to inmate Owens on the date and times the call was placed.

(Dec. of Julie Groteboer, Ex.3 at 2). Petitioner admitted to the investigating officer, the UDC, and the DHO the underlying facts: that he dialed the phone using his own PIN number and passed the telephone to another inmate to talk because the other inmate no longer had any money. Thus, there can be no doubt that Petitioner was aware of the facts underlying the charge prior to the DHO hearing. Petitioner was apprised "in advance of the disciplinary hearing of the nature of the claimed violation," Meis v. Gunter, 906 F.2d 364, 367(8th Cir. 1990), and he has not shown (or even argued) that he was in anyway prejudiced or unable to marshal a proper defense. Therefore, the Court finds that Petitioner received adequate notice of the charges against him and his rights of due process were satisfied. See Morrison, 2009 WL 2003332, at *6

(finding that petitioner's due process rights were met "because the notice described the nature of the disciplinary charge, as well as the facts and circumstances on which the charge was based, in a manner that allowed for a meaningful response").

### B. Sufficient Evidence Supports the DHO's Decision

Petitioner argues that he did not violate BOP Code 297 because he "never possessed nor used an inmate's pin number." (Pet. for Writ of Habeas Corpus at 3).[6]

The federal due process clause requires that a prison disciplinary board establish its factual findings at the hearing using "some evidence" as the standard of proof. Hill, 472 U.S. at 454; Goff v. Dailey, 991 F.2d 1437, 1441 (8th Cir. 1993). "The standard is met 'if there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. "Thus, courts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record." Gomez v. Graves, 323 F.3d 610, 612 (8th Cir. 2003). The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

---

[6] Petitioner failed to list any grounds upon which he was filing this Petition, and as such, liberally reading his submission in light of his pro se status, the Court reads this claim from the appeal submitted through the administrative appeals process.

In this case, there is more than "some evidence" in the record to demonstrate that Petitioner aided another prisoner in committing a violation of Code 297. First, the amended incident report completed by the investigating officer stated that Petitioner was observed on video dialing a phone number listed on another inmate's phone list, and after the individual on the receiving end of the phone call picked up, Petitioner passed the telephone to the other prisoner. Second, after Petitioner was provided with a copy of the initial incident report and advised of his rights, he stated that: "Yeah it's just like you said[.] He didn't have any money and he's a friend of mine so I let him check on his Mom[.] [W]e don't owe each other nothing we are just friends." More importantly, however, at his hearing before the DHO, Petitioner specifically admitted that he "did place the call and pass the phone to the other inmate, [because he] didn't think it was a 297." The documented incident report and Petitioner's admission are more than sufficient to satisfy the "some evidence in the record" standard.

Therefore, on the present record before this Court, the Court finds that the DHO's decision and findings are supported by "some evidence," at the very least. See Martinez, 2011 WL 2112428, at *3 (finding that the Petitioner's admission of possessing an item that was later found to be contraband was sufficient to satisfy the "some evidence" standard).

14

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

**1.** Petitioner's Petition for Writ of Habeas Corpus be denied;

**2.** This action be dismissed with prejudice;

**3.** Judgment be entered accordingly.


Dated: February 6, 2013                                         s/Leo I. Brisbois
                                                                LEO I. BRISBOIS
                                                                United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 20, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.